## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 2 8 2011

Clerk of Court

| | | |
|---|---|---|
| GARY COFFMAN and PATRICIA COFFMAN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| ALVIN COMMUNITY COLLEGE, DREW NELSON, and JOHN BETHSCHEIDER, | § § § § | |
| Defendants. | § § | |

### PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT: Gary Coffman and Patricia Coffman file their original complaint and jury demand complaining of Alvin Community College, Andrew Nelson, and John Bethscheider.

### A.  Nature of Action

1.     This is an action for damages, statutory, and equitable relief brought pursuant to provisions of the First and Fourteenth Amendments to the CONSTITUTION OF THE UNITED STATES; the CIVIL RIGHTS ACT OF 1871, 42 USC, §1983; Title VII of the CIVIL RIGHTS ACT OF 1964, as amended, 42 USC, §2000e *et seq*; Texas LABOR CODE, §21.051 and §21.055.

### B.  Parties

2.     Plaintiffs are employees of Defendant Alvin Community College (ACC), as that term is defined in Title VII, 42 USC §2000e and the Texas LABOR CODE, §21.002. Gary Coffman is a tenured full professor in the Department of Sports and Human Performance. Patricia Coffman is a part time instructor in the same department. Collectively, they have

coached and taught health, physical education, men's basketball, and human performance to the students of ACC for 62 years.

       3.     ACC is a publically funded local unit of government in the State of Texas, organized and existing pursuant to Texas EDUCATION CODE §130.001, *et seq*. Service of process may be delivered to its chief administrative office, President A. Rodney Allbright at Alvin Community College, Office of the President, 3110 Mustang Road, Alvin, Texas 77511. It is an employer within the meaning of definitions assigned by Title VII, 42 USC §2000e(b) and the Texas LABOR CODE, §21.002(8).

       4.     Andrew Nelson is Dean of Academic Programs, and a decision maker with respect to the employment actions made the basis of this suit. He may be found for service of process at Alvin Community College, Office of the Dean of Academic Programs, 3110 Mustang Road, G-Building, Alvin, Texas 77511.

       5.     John Bethscheider is Provost of the College and Dean of Instruction, and a decision maker with respect to the employment decisions made the basis of this suit. He may be found for service of process at Alvin Community College, Office of the Provost, 3110 Mustang Road, Science Building, Alvin, Texas 77511.

### C.  Jurisdiction and Venue

       6.     This Court is empowered to hear this case pursuant to its federal question jurisdiction, 28 USC §1331. There is supplemental jurisdiction to Plaintiff's state law claims, pursuant to 28 USC §1367. Sovereign immunity has been waived by acts of Congress, including 42 USC, §1983; 42 USC, §2000e, *et seq*.; and Texas LABOR CODE, Chapter 21. There is no Eleventh Amendment immunity for actions against local units of government in federal court. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001).

7.      Patricia Coffman's employment discrimination claims have been properly and timely filed with the UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) and the TEXAS WORKFORCE COMMISSION – CIVIL RIGHTS DIVISION (TWC-CRD). She has received a right to sue letters from the UNITED STATES DEPARTMENT OF JUSTICE (DOJ) on referral from EEOC, and this suit is timely filed, pursuant to that letter.

8.      Patricia Coffman has also filed a charge of employment retaliation with EEOC/TWC-CRD against ACC. On June 24, 2011, EEOC has issued its determination that ACC has retaliated against Patricia Coffman by withholding a benefit of employment in retaliation for her earlier conduct in filing a Charge of Discrimination, which was protected by the anti-retaliation provisions of Title VII and the LABOR CODE. Conciliation procedures with respect to this determination are presently pending with the EEOC.

9.      The transactions, acts, and omissions made the basis of Plaintiffs' claims occurred in the Galveston Division of the Southern District of Texas, where all of the human parties reside, and where the institutional party maintains its principal office.

### D.  Relevant Facts

10.     Gary Coffman has served on the faculty of ACC from August 1979 until present. His performance has been exemplary. He holds the highest academic degree in his profession, the Ed.D. conferred by University of Mississippi in 1974. He has earned many honors and distinctions of and from his students, peers, and supervisors. As a basketball coach, his teams competed successfully at a national level until the basketball program was dropped under budgetary and political pressures incident to implementation of Title IX of the EDUCATION AMENDMENTS OF 1972 in 1993. Thereafter, he continued to serve honorably and with distinction as a tenured full-time instructor in the Department of Sports and Human Performance.

11.     Patricia Coffman has served as a part-time instructor on the faculty of ACC in the Department of Sports and Human Performance for 29 years. She holds a Master's degree from the University of Alabama, and has received an additional 36 semester hours of professional instruction as the Education Specialist Degree program from the University of Mississippi. Until the events made the basis of this suit, she was regularly assigned three-four classes in each academic semester at ACC.

12.     Dr. Andrew Nelson was installed as Dean of Academic Programs in 2007. Thereafter, he set about on campaign or program, which he described as one of change and innovation, but which implicitly, uniformly, and intentionally bore trademark incidents of power consolidation within the institutional structures of ACC. These incidents of power consolidation inevitably included features of age and other illegal forms of employment discrimination as Dean Nelson removed seasoned and independent members of the faculty, replacing them with younger, inexperienced, inexpensive, and impressionable faculty members who were personally dependent on him for their employment with the governmental institution.

13.     Typical of this strategy was Dean Nelson's removal of Dr. Jennifer Hightower, long time chair of the Department of Sports and Human Performance, Athletic Director, and Softball Coach. Dr. Hightower was replaced by the less credentialed Bonny Johnson.

14.     In January 1999, Dr. Don Childs, a long-time coach and Athletic Director at ACC, suffered a stroke, which rendered him unable to perform his on-field and classroom teaching duties. Thereafter, he was allowed to perform duties, which basically involved collecting papers from students who had enrolled in courses, which did not involve active coaching or classroom lectures, such as bowling. Dr. Childs continued drawing the full salary of his tenured professorship, approximately $80-90,000 per year, despite his inability to perform

any on-field coaching or classroom teaching duties. Baseball has long been considered a favored sport in the ACC Sports and Human Performance curriculum, having enjoyed substantial endowment and underwriting from Major League Baseball legend and former Alvin resident, Nolan Ryan.

15.     Though being personally well-disposed to Dr. Child and his plight, Gary Coffman did, on more than one occasion speak out in appropriate public forums against the obvious ethical and legal problems involved in paying full salary to a largely incapacitated faculty member, as well as other problems he observed in the management of ACC's business. Specifically, during the period 2007-08 he spoke out about and against:

   a.   The payment of full-salary to an incapacitated, and essentially non-working faculty member; and

   b.   Loss of credibility in the Department of Sports and Human Performance through the proliferation of the TBA classes and the decision by Dr. Bethscheider to drop the 2 hour PE activity requirement for Allied Science Programs;

16.     The economic collapse of 2008-09 brought budgetary pressures to bear on those responsible for management of ACC's financial affairs. Enrollments dropped, and extra-mural funding sources dried up. One of Dean Nelson's techniques for dealing with the financial pressure was to eliminate a faculty position in the Department of Sports and Human Performance – Gary Coffman's.

17.     Dean Nelson did not choose to eliminate the most recently hired faculty member's position, as the college had done in the Court Reporting faculty, where the time-honored accounting and management principle, Last-In-First-Out was employed. Nor did he choose to eliminate the position of a faculty member who was performing essentially no productive function fulfilling the ACC mission.

18.     Dean Nelson knew he was prohibited by law from terminating Gary Coffman's tenured professorship without good cause. Rather, he chose to compound the error of his earlier bad decisions by transferring Gary Coffman from the Department of Sports and Human Performance to the English Department, where he would teach English grammar and literature, subjects in which had no professional training or experience.

19.     Gary Coffman followed established procedures to grieve and protest the proposed transfer which was not only personally adverse to him, but against the best interest of all students who would be enrolled in his English classes and the College generally. He followed the grievance procedure up the chain of hierarchic command in the ACC organizational structure until his petition reached President Rodney Allbright.

20.     President Albright agreed with Gary Coffman's analysis that Dean Nelson's proposed transfer made no logical sense, and would prove to be detrimental to all involved: Professor Coffman, students in the English department, and the College generally. He reversed Dean Nelson's decision in a letter dated May 13, 2009.

21.     Thereafter, Dean Nelson announced that Patricia Coffman's teaching load, and income, would be reduced by 50%. Her classes First Aid and Introduction to Physical Education were being assigned to Gary Coffman, with no increase in his salary. Both Gary and Patricia Coffman recognized Dean Nelson's action as a likely act of retaliation for Gary Coffman's grievance of the proposed transfer of a Sports and Human Performance faculty member to the English department, but lacked evidence of Nelson's retaliatory intent. They were, however, able to recognize age and gender discrimination in the administrators' actions, and with the assistance of counsel, filed the Charge of Discrimination with EEOC/TWC-CRD referenced at ¶8 of this complaint and jury demand.

22.     The missing evidence of retaliation was supplied on July 28, 2009 when Gary Coffman met with his department head, Bonny Johnson at approximately 3:30 p.m. in her office. Gary Coffman asked Bonny Johnson if she knew why Dean Nelson and Provost Bethscheider had focused on him in their decision to remove him from the Department of Sports and Human Performance and move him to the English department. She replied that she considered to action to be "political" and contrary to the LIFO principle followed in the Court Reporting department, when the most recently hired faculty was removed in a reduction in force.

23.     The conversation with Bonny Johnson continued, Gary Coffman asking specifically if Dean Nelson and Provost Bethscheider had taken away his wife's classes and income as a means of punishing him for appealing the English department transfer up to President Albright and his vocal opposition to unethical and illegal management practices. She replied unequivocally, "Yes," going on to elaborate that both Dean Nelson and Provost Bethscheider were very angry with his grievance to President Albright.

24.     On or about September 5, 2009, Patricia Coffman, acting pursuant to Grievance Procedures set out in the Alvin Community College Board of Regents Policy Manual filed a grievance of the arbitrary and retaliatory reduction in her teaching load and other improper actions taken against her and her husband. Among other issues, this grievance addressed:

   a.   Age and gender discrimination in adverse manipulation of her teaching assignments;
   b.   Improper, unethical, and illegal payment of salary to an individual who was performing little, if any services in furtherance of the College's mission;
   c.   Disparate treatment in allocation of closet space for teaching equipment;
   d.   Continued retaliation against her husband;
   e.   Associational retaliation against Patricia Coffman because of her husband's opposition to illegal and unethical practices; and
   f.   Dean Nelson's continued personal excoriation of both Patricia and Gary Coffman with unwarranted criticism of them to faculty groups and other ACC personnel.

25.     On September 23, 2009, Patricia Coffman was informed by letter over President Rodney Allbright's signature that her internal grievance procedure was being unilaterally abated because she had filed a Charge of Discrimination with EEOC addressing some of the same issues raised in the grievance. Patricia Coffman thereafter filed a supplemental Charge of Discrimination with EEOC explaining that the ACC Grievance Procedures were a benefit of employment, separate and apart from the charging process of external administrative agencies, such as EEOC or TWC-CRD, and that she was illegally denied access to and participation in that benefit of her employment in retaliation for her having filed a charge of age and gender discrimination. Abatement of the grievance was not only arbitrary, capricious, and retaliatory conduct, but also effectively prevented her from obtaining any relief through restoration of her normal teaching load for the foreseeable future.

26.     Retaliation as continued against Gary Coffman. The departmental head has recently taken away his weight training classes and the summer term classes he had taught for many years. Dean Nelson has made threats of employment termination, and other unprofessional remarks to the faculty and staff members in the Sports and Human Performance Department regarding Dr. Coffman.

27.     As a result of Defendant's actions set out in this complaint, Plaintiffs have suffered loss of income and injury to their future wage earning capacity. They have suffered physical pain and mental anguish in the past, and will continue to suffer such elements of damage until these matters are resolved in accordance with law.

### E.  Legal Principles – Causes of Action

28.     Gary Coffman makes a First Amendment retaliation claim against Drew Nelson and John Bethscheider pursuant to 42 USC §1983. Adverse employment and other negative

actions taken subsequent to his appeal of the proposed transfer to the English department were in retaliation for exercise of his constitutionally protected rights of free speech and petition, and were a cause of the damages alleged herein.

29.     Gary Coffman makes substantive and procedural due process claims against Drew Nelson and John Bethscheider pursuant to 42 USC §1983. He has been denied meaningful access to ACC policies and procedures, which were intended to prevent or mitigate arbitrary, capricious, and unreasonable management actions. He has been forced to watch helplessly as the administration punishes his wife for no reason other than her status as his spouse. He has been forced to accept drastic cuts in income, while at the same time a similarly credentialed faculty member, who performs fewer services, but who has not spoken out against the administration's illegal ways continues to receive full salary and benefits.

30.     Patricia Coffman makes substantive and procedural due process claims against Drew Nelson and John Bethscheider pursuant to 42 USC §1983. She has been denied meaningful access to ACC policies, procedures, and employment which were intended to prevent or mitigate arbitrary, capricious, and unreasonable management actions. She has been forced to helplessly endure administration punishments for no reason other than her status as her husband's spouse. She has been forced to accept drastic cuts in income for no legitimate reason whatsoever.

31.     Patricia Coffman makes claims of age and gender discrimination pursuant to 42 USC, §2000e-2. Her teaching assignments, and the income associated therewith have been taken away and given to significantly younger or male employees, without any legitimate business reason.

32.     Patricia Coffman makes claims of age and gender discrimination against ACC pursuant to Texas Labor Code, §21.051. Her teaching assignments, and the income associated

therewith have been taken away and given to significantly younger or male employees, without any legitimate business reason.

33.   Patricia Coffman reserves the right to assert statutory retaliation claims against ACC pursuant to 42 USC, §2000e-3, and Texas LABOR CODE, §21.055, by way of amendment to this complaint, in the event EEOC conciliation procedures are unsuccessful and right to sue letters for those claims are issued by the appropriate administrative agencies.

## F.   Remedies and Damages

34.   After notice and hearing, Plaintiffs seek temporary injunctive orders:

    a.   Restoring all teaching assignments improperly removed out of retaliatory or discriminatory motive;

    b.   Restoration of all income taken away due to improper reduction of teaching assignments; and

    c.   Prospective orders against future retaliation or discrimination.

35.   Upon final hearing, Plaintiffs pray for judgment of and from defendants for the full measure of their damages and statutory remedies, including:

    a.   Reinstatement to full teaching duties, as practiced before the retaliatory and discriminatory actions made the basis of this suit;

    b.   Restitution of back pay and benefits, including seniority lost as a result of the retaliatory and discriminatory actions made the basis of this suit;

    c.   Compensatory damages for mental anguish, emotional distress, and injury to future earning capacity;

    d.   Injunctive orders against future retaliation and discrimination;

    e.   Attorney fees; and

    f.   Costs of this action.

## G.   Jury Demand

36.   Plaintiffs demand a trial by jury.

Respectfully submitted,


Gary Coffman, Plaintiff, *pro se*


Patricia Coffman, Plaintiff, *pro se*