IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| GARY COFFMAN and | § | |
| PATRICIA COFFMAN | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. G-11-361 |
| | § | |
| ALVIN COMMUNITY COLLEGE | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court, with the consent of the parties, is Defendant Alvin Community College's Motion for Summary Judgment ("Defendant's Motion"). (Docket Entry ("Dkt.") No. 35). Plaintiffs Gary and Patricia Coffman filed a response to the Motion (Dkt. No. 39) followed by several supplemental responses (Dkt. Nos. 40, 41, 42) and an amended response. (Dkt. No. 44). Defendant filed a reply (Dkt. No. 45) and objections to Plaintiffs' response. (Dkt. No. 46). Plaintiffs then filed an Opposed Motion for Leave To File a Supplemental Response (Dkt. No. 47), to which Defendant filed a response. (Dkt. No. 50). After carefully considering the Motion, the responses and replies, and the applicable law, this Court now issues this Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing this action for the reasons discussed herein.

## I. BACKGROUND

Plaintiffs Dr. Gary Coffman and Mrs. Patricia Coffman filed this employment-related action against Alvin Community College (ACC). (Dkt. No. 32 (Third Amended Complaint)).

1

The relevant facts in this case are fairly straightforward. The Coffmans are both college instructors in ACC's Sports and Human Performance Department (hereinafter, "the Department"). Dr. Gary Coffman is a full-time instructor who is under a continuing contract of employment with ACC (Dkt. No. 35, Ex. A (Dr. Coffman depo.), Attach. No. A-1), whereas Mrs. Coffman is an at-will employee and a part-time instructor. (*Id.*, Ex. B (Patricia Coffman depo.) at 8:6-23).[1]

There is no dispute amongst the parties that in 2009 the Department was faced with a fairly substantial decline in student enrollment (*e.g.*, 871-897 students enrolled in 2004-2005 Fall/Spring semesters versus 534 students enrolled in 2008-2009 Fall/Spring semesters), which was due, in part, to a decision to eliminate the requirement that students in the nursing and allied health programs take Department courses. (Dkt. No. 35, Ex. A at 57-58; Ex. C (Dean Nelson Aff.) At ¶4 & Attach. No C-5; Ex. D (Dr. Bethscheider Aff.) at ¶5; Ex. E (Bonny Johnson Aff.) at ¶5; *see also*, Dkt. No. 32 at 6). Rather than terminate any instructors, ACC's administrators made the decision to reduce the courses offered by the Department. (*Id.*, Exs. C - E). To achieve this end, in or around January 2009, the Department Chair, Bonny Johnson (Johnson), initially requested each of the Department's full-time instructors to review a list of the course offerings, indicate which courses they were either willing or unwilling to teach and identify which classes they believed should no longer be offered. (*Id.*, Ex. C at ¶4; Ex. E at ¶5 & Attach. No. E-1; Ex. (Dean Nelson depo.) at 24:4-17).

The decision to reduce the Department's course offerings for the 2009 Fall semester prompted additional concerns for the Department – namely, the need to maintain the minium

---

[1] Regardless of the nature of their employment, the Coffmans have both acknowledged that they are not entitled to teach courses of their own choosing or a specific number of courses. (Dkt. No. 35, Ex. A at 25; Ex. B at 9-10).

teaching loads for all of its full-time instructors. (Dkt. No. 35, Ex. C at ¶8; Ex. E at ¶8). To meet this need, ACC administrators proposed that full-time instructors in the Department, while maintaining a partial teaching load within the Department, temporarily take on limited responsibilities outside of the Department. (*Id.*, Ex. C at ¶4 & Attach. No. C-2 at 1-2; Ex. D at ¶5; Ex. E at ¶5). In order to maintain their minimum teaching loads, several full-time instructors in the Department agreed to do so on a temporary basis. (*Id.*). When Dean Nelson approached Dr. Coffman with the proposal in or around February 2009, Dr. Coffman was not receptive to the proposed temporary measures. (Dkt. No. 32 at 7, ¶3; Dkt. No. 35, Ex. A at 37-38, 41, 43, 49-50, 53-55; Ex. C at ¶¶5-6; Ex. E at ¶¶6-7). In fact, in a letter dated April 21, 2009, Dr. Coffman wrote to Dr. Bethscheider and complained about the proposed changes and suggested that other full-time instructors take on other responsibilities. (Dkt. No. 35, Ex. A-7; Ex. D at ¶7). On May 13, 2009, Dr. Coffman followed up his letter to Dr. Bethscheider with an email in which he requested that he be allowed to continue his "teaching career in Physical Education." (*Id.*, Ex. A, Attach. No. A-8). A short time later, Dr. Coffman forward the email to Dr. Allbright, ACC's President. (*Id.*, Ex. A, Attach No. A-8; Ex. D at ¶8). Dr. Coffman communicated to Dr. Allbright that he felt like he was on the verge of "losing" his career and so he requested Dr. Allbright's intervention so as to halt any proposed changes in his responsibilities. (*Id.*). Dr. Allbright responded to Dr. Coffman the same day. Although Dr. Allbright reminded Dr. Coffman of the difficulties facing the Department, he assured Dr. Coffman that his course assignments for the upcoming Fall 2009 semester would all be within the Department. (*Id.*, Ex. A, Attach. No. A-9; Ex. H (Dr. Rodney Albright Aff.) at 2). Dr. Allbright also informed Dr. Coffman that his course assignments would be "based upon a review of available courses and the number of

3

students who sign up for those courses, including what had formerly been considered part-time instructional sections," and that course assignments would be "based on available courses within the department and the number of students enrolled in specific sections" and "[a]ny other assignments would be made to augment the necessary course load for full time faculty." (Id., Ex. A, Attach. No. A-9; Ex. H at 2).[2]

The decision to allow Dr. Coffman to teach only courses offered within the Department, necessitated changes to the proposed Fall 2009 course schedule in order to ensure that he could maintain his minimum course load of five courses. (Dkt. No. 35, Ex. C at ¶¶ 6-8 & Attach. Nos. C-1 & C-2; Ex. D at ¶10; Ex. E at ¶8). However, ACC's administrators felt their options were limited because they could not ignore the need of other full-time instructors in the Department who were required to maintain their own minium course loads; and, based on his earlier responses, Dr. Coffman was only willing to teach certain courses. (Id., Ex. E at ¶9 & Attach. No. E-1).[3] Given these factors, in or around May 2009, a decision was reached to assign Dr. Coffman two First Aid courses and a Drug Use/Abuse course. As reflected in the originally proposed Fall 2009 schedule, these courses had initially been assigned to part-time instructor, Patricia Coffman.[4] (Id., Ex A at ¶9 & Attach. No. A-10; Ex. B at 8-9 & Attach. No. B-1 at 2; Ex. C at ¶8 & Attach. Nos. C-1, C-2; Ex. E at ¶9 & Attach. No. E-1).

---

[2] Dr. Coffman acknowledged he never taught classes outside the Department. (Dkt. No. 35, Ex. A at 51:17-23).

[3] In particular, Dr. Coffman's responses reflected that he was willing to teach, among other courses, fitness/wellness, introduction to fitness, first aid and drug use/abuse; however, he was unable or unwilling to teach several courses which included karate, aerobic dance, aerobics, low impact aerobics, yoga/pilates, cardio kickboxing and scuba. (Dkt. No. 35, Ex. E-1).

[4] Mrs. Coffman's teaching schedule – all of which were lecture courses – consisted of First Aid classes, Introduction to Physical Education in the Fall semester and Health in the Spring semester. (Dkt. No. 32 at 4; Dkt. No. 35, Ex. B, Attach. No. B-1 at 3).

On August 12, 2009, Dr. Coffman expressed dissatisfaction with the Fall 2009 schedule and he requested a further modification to accommodate both his schedule and Mrs. Coffman's preferences. (Dkt. No. 35, Ex. A, Attach. No. A-11; Ex. C at ¶8; Ex. E at ¶9). Specifically, Dr. Coffman requested that ACC switch two of the classes he was assigned with two classes that Mrs. Coffman was assigned. ACC accommodated the Coffmans' request. (*Id.*, Ex. A at 69-70 & Attach. No. A-11; Ex. C at ¶8 & Attach. No. C-1; Ex. E at ¶9). Thereafter, one of the courses that Mrs. Coffman was assigned to teach (*i.e.*, the First Aid class) failed to meet the minimum enrollment numbers and, consistent with ACC's policy, the course was cancelled. This left Mrs. Coffman with only one course to teach in the Fall 2009 semester. (Dkt. No. 35, Exs. C at ¶8; C-1; E at ¶¶9-10).

On September 11, 2009, Mrs. Coffman submitted an administrative grievance with ACC and she also filed a charge of discrimination with the EEOC. (Dkt. No. 35, Ex. B at 41, 43-44 & Attach. Nos. B-1 & B-2). Given her pending EEOC charge, which raised identical issues to those raised in the grievance, Dr. Allbright informed Mrs. Coffman that her grievance would be abated, not denied. (*Id.*, Ex. B at 44 & Attach. No. B-3; Ex. H at ¶7). This prompted Mrs. Coffman to file a supplemental/amended charge of discrimination with the EEOC in which she also charged that she was being denied the benefit of ACC's grievance process and this was being done in retaliation for her filing a charge of age and gender discrimination. (Dkt. No. 32 at 10).

Approximately one year later, Dr. Coffman submitted a grievance to ACC on September 16, 2010. (Dkt. No. 35, Ex. A at 26:7–21 & Attach. No. A-2; Ex. E at ¶10; Ex. H at ¶5). Dr. Coffman's grievance was initially heard by Johnson, who was the Department Chair, and then by Dr. Allbright. (*Id.*, Ex A at 27, 29-30 & Attach. Nos. A-3, A-4; Ex. E at §10; Ex. H at 2-3).

Dr. Allbright responded to the grievance as follows: (1) Dr. Coffman was informed that Johnson had no intent to teach a volleyball course during the Spring 2011; (2) Dr. Coffman was informed that safety renovations were being performed on the bleachers, but that he would not be negatively impacted because the work would be completed before his class in the Spring 2011; and (3) it was explained to Dr. Coffman that overload assignments were necessitated by student enrollment levels and that only one overload course had been approved and it was due to high student enrollment in a particular instructor's course. (*Id.*, Ex. A at 26-30 & Attach. No. A-4 at 2-3). Although Dr. Coffman appealed Dr. Allbright's decision to the ACC Board, he later voluntarily withdrew his appeal. (*Id.*, Ex A at 30, 32 & Attach. No. A-5; Ex. H at 2-3).

In June 2011, Dr. Coffman filed another grievance. (Dkt. No. 35, Ex. A at 93 & Attach. Nos. A-14, A-15). In this grievance, Dr. Coffman complained about the compensation that he received for teaching two courses during summer school. (*Id.*). Although Dr. Coffman acknowledged that he was paid in accordance with ACC's policy,[5] he requested that he be paid for both classes. (*Id.*). Dr. Coffman also expressed his belief that the availability and course assignments for the Summer 2011 was arbitrary and made in retaliation for the events that occurred in 2009. (*Id.*). Finally, Dr. Coffman sought an apology for the events that transpired in 2009 because he felt the events tainted his reputation. (*Id.*). After Dr. Coffman's grievance was heard, the following determinations were made: (1) it was agreed that all full-time faculty would be given more input in the scheduling/curriculum process; (2) the payment he received for the courses he taught in the summer was consistent with established ACC's policy and/or practice

---

[5] ACC policy or practice dictated that when an instructor teaches two classes, but each class has less than 15 students enrolled, the instructor will be paid for a single class. There is no dispute that Dr. Coffman taught two classes in the summer, however, the *combined* enrollment for the two classes was 16 students. (*See* Dkt. No. 35, Ex. A at 93:6-10 & Attach. Nos. A-14, A-15).

and, thus, he was not entitled to additional compensation; and (3) his request for an apology was denied. (*Id.*)

On July 28,2011, Plaintiffs Dr. Gary Coffman and Patricia Coffman filed this action against ACC in federal court.[6] Bringing claims under 42 U.S.C. §1983, Dr. Coffman asserts a retaliation claim[7] and Mrs. Coffman asserts a claim that her due process rights were violated. Additionally, Mrs. Coffman asserts claims of age discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Upon the completion of discovery, ACC filed this Motion for Summary Judgment which is now ripe for adjudication.

## II. STANDARD OF REVIEW

The Court analyzes the Defendant's Motion for Summary Judgment under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Claims Brought Under 42 U.S.C. §1983

#### 1. Retaliation

Dr. Coffman alleges that ACC retaliated against him for "his attempting to exercise his procedural and substantive due process rights," including his right to complain of academic

---

[6] Plaintiffs' Third Amended Complaint is the live pleading in this action. (*See* Dkt. No. 32).

[7] During Dr. Coffman's deposition, his attorney clarified on the record that he was not bringing a due process claim. Instead, his claim is that he exercised or attempted to exercise his due process rights and then was retaliated against. (Dkt. No. 35, Ex. A at 32-34).

freedom. To establish a claim for retaliation under § 1983,[8] the Fifth Circuit requires a plaintiff to demonstrate (1) he engaged in conduct protected by the Constitution or by statute; (2) that the defendant took adverse action against the plaintiff for the exercise of that right; and (3) that the adverse action was a specific retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998)); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Chalmers v. Lane*, No. 3:03-CV-1268-BH, 2005 WL 169990, at *6 (N.D. Tex. Jan. 25, 2005); *see also, Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (a personal belief that plaintiff is the victim of retaliation will not suffice).

Dr. Coffman's retaliation claim fails for several reasons. Initially, neither the email he sent Dr. Allbright in May 13, 2009, nor the grievances he filed in September 2010 or June 2011, implicate any constitutionally protected due process concerns (*i.e.*, protected property rights or interests). *See DePree v. Sanders*, 588 F.3d 282, 289 (5th Cir. 2009). Additionally, Dr. Coffman cannot prove that he was subjected to adverse employment action because he was not discharged, demoted or transferred and his base salary has not been reduced.[9] *Breaux*, 205 F.3d at 157 (for purposes of a claim brought under §1983, adverse employment actions are limited to discharges, demotions, refusals to hire or promote, reprimands and transfers that are sufficiently punitive or

---

[8] A plaintiff who brings an action under §1983 against a governmental entity, such as ACC, is required to plead and prove the existence of an official policy that was promulgated by the policymaker for that entity and that the policy was the moving force behind the alleged violation of constitutional law. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The law is clear that a governmental entity cannot be held vicariously liable under a theory of respondeat superior. *Id.* In this case, the Coffmans fail to identify what ACC policy, promulgated by its Board of Trustees, was the moving force behind the violation of their Constitutional rights. (Dkt. No. 35, Ex. L (ACC Board Policy §4.02)) (ACC's Board of Trustees is "the sole policy making body of the College.").

[9] Dr. Coffman was employed under a contract with ACC. He acknowledged that he was not contractually entitled to teach overload courses. (Dkt. No. 35, Ex. A at 90-92). Moreover, with regard to the courses he taught in the Summer 2011 semester, he has acknowledged that he was paid in accordance with ACC's policy. (*Id.*, Ex. A at 89).

less prestigious); *see also*, *DePree*, 588 F.3d at 287-88.[10] Instead, Dr. Coffman contends that after he objected to the proposal to have him temporarily take on responsibilities outside of the Department and he filed two grievances, ACC retaliated against him because he was "no longer being allowed overload classes each semester" and he was not teaching summer courses. (Dkt. No. 32 at ¶49; Dkt. No. 35, Ex. A at 51-53, 107-108). This is not sufficient. In the context of education, the Fifth Circuit has reiterated that "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of constitutional deprivation." *Breaux*, 205 F.3d at 157; *see also*, *DePree*, 588 F.3d at 287-88; *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997); *Dorsett v. Bd. of Trs. for State Colleges & Univs.*, 940 F.2d 121, 123 (5th Cir. 1991).[11]

## 2. First Amendment Free Speech Retaliation Claim

Although not entirely clear from the pleadings, it appears that Dr. Coffman could be heard to assert a First Amendment free speech retaliation claim. (Dkt. No. 32). "To prevail on a First-Amendment, free-speech retaliation claim under §1983, a public employee must show that (1) [he] suffered an adverse employment action; (2) [his] speech involved a matter of public concern; (3) [his] interest in commenting on matters of public concern outweighed the defendant's interest in

---

[10] The undisputed evidence reflects that Dr. Coffman was never transferred, nor was he ever assigned responsibilities outside of the Department. *Cf. Breaux*, 205 F.3d at 157 (a reprimand that is rescinded does not constitute adverse employment action).

[11] To the extent that Mrs. Coffman could be heard to allege a claim of retaliation under §1983 when her classes were re-assigned to Dr. Coffman, this claim would have no merit because the protected activity she alleges (*i.e.*, submitting a grievance or EEOC charge) occurred subsequent to the alleged adverse employment action. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Jones v. Houston Ind. Sch. Dist.*, Civ. Action No. H-08-4742, 2010 WL 2557780, at *4 (S.D. Tex. June 22, 2010) (Froeschner, J.).

promoting workplace efficiency; and (4) [his] speech was a substantial or motivating factor in the defendant's adverse employment action." *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014); *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011).

As urged by Defendant, to the extent that this claim was asserted by Dr. Coffman, it fails as a matter of law. (Dkt. No. 35 at 16-17). In particular, Dr. Coffman cannot show that he was subjected to an adverse employment decision that would satisfy the Fifth Circuit definition for First Amendment retaliation claims brought under 42 U.S.C. § 1983. *Breax*, 205 F.3d at 157 (explaining that an adverse employment decision meant discharge, demotion, refusal to hire, refusal to promote, or reprimand). Further, it is clear to this Court that Dr. Coffman's speech did not involve matters of public concern, but only matters of personal concern[12] with which courts should not interfere. *See Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988). Finally, Dr. Coffman fails to adduce any evidence that his speech, to the extent that it was protected, was a substantial or motivating factor in the ACC's actions.[13]

### 3. Due Process Claims

Mrs. Coffman contends that ACC violated both her procedural and substantive due process

---

[12] *See e.g.*, Dkt. No. 35 at 17, n. 16. The Court also finds that any attempt by Dr. Coffman to cast his speech about another instructor, who is disabled, as a matter of public concern is unavailing. *See Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir.1991) (whether speech is protected by the First Amendment is a question of law to be determined by the Court); *see also, Harris v. Quinn*, 134 S.Ct. 2618, 2642, n. 28 (2014) (recognizing that a single public employee's pay is usually not a matter of public concern); *see generally, Connick v. Myers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case.")

[13] To the extent that Dr. Coffman could be heard to allege an academic freedom claim (Dkt. No. 32 at ¶49), it would fail because there is no evidence that his ability to teach content in a particular manner was oppressed or challenged. *See Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir. 1982) (academic freedom "protects against infringements on a teacher's freedom concerning classroom content and method").

rights based on decision(s) ACC made regarding her course load.[14] (Dkt. No. 32 at ¶¶40, 45, 52). ACC argues that, aside from failing to plead the basic elements of a §1983 claim,[15] her due process claims fail because she has no constitutionally protected property interest. (Dkt. No. 35 at 17-18).

"The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest. *DePree*, 588 F.3d at 289. These interests are not created by the Fourteenth Amendment's Due Process Clause. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995). Instead, to the extent they exist, these interests are created either by operation of contract or state law. *Id.* When no protected interest exists, "no right to process accrues." *Id.*; *see also, Gentilello v. Rege*, 627 F.3 540, 545 (5th Cir. 2010) (explaining that "[a]bsent a property interest, there is nothing subject to due process protections and our inquiry ends.").

Here, Mrs. Coffman, who is an at-will employee, fails to substantiate her allegations by pointing to any state law or contract that supports that she has a protected property interest protected by the Due Process Clause. *Blackburn*, 42 F.3d at 940. On the contrary, she has acknowledged that ACC could reassign courses as it saw fit, that no ACC policy or state law provided her rights to teach certain classes, that she had no protected right to teach particular courses, and that the amount she was paid per course she taught did not decrease. (Dkt. No. 35, Ex. B at 9-10, 38; Ex. E at ¶18). Moreover, the Fifth Circuit has determined that, with regard

---

[14] The Court pauses to note that Mrs. Coffman was not terminated, nor was she made the subject of stigmatizing charges. (*See* Dkt. No. 32). While Mrs. Coffman alleges that ACC abated her grievance, she asserts this claim as a Title VII retaliation claim. (Dkt. No. 32 at ¶¶4, 48, 52).

[15] *Supra* note 8.

to at-will employee, "[t]he due process clause does not protect [a professor's] specific job duties or responsibilities absent a statute, rule or express agreement reflecting an understanding that [she] had a unique property interest in those duties or responsibilities." *Gentilello*, 627 F.3d at 544-45; *see also, Jett v. Dallas Indep. School Dist.*, 798 F.2d 748, 754 n. 3 (5th Cir. 1986).

Notwithstanding, even assuming Mrs. Coffman could establish a property interest in her course load, the evidence does not establish that ACC's decision to reduce or change her course load was either arbitrary or capricious. *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011); *Williams v. Tex. Tech Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993) (for purposes of evaluating substantive due process claims, including those based on salary reductions, "[j]udicial evaluation of academic decisions requires deference and they are overturned only if they are such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.").

## C. Title VII Claims

### 1. Age Discrimination Claim

Title VII makes it unlawful for an employer to engage in an adverse employment action based on an employee's age. *See* 42 U.S.C. § 2000e-2(a). In order to establish a *prima facie* case of employment discrimination based on age, a plaintiff must show: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) non-protected employees were treated differently or given preferential treatment under "nearly identical" circumstances. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see also, Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005) (recognizing that the fourth

prong may also be met if a plaintiff shows that he was "treated differently from others similarly situated").

In the present case, it is clear that Mrs. Coffman can show several of the elements required to establish a *prima facie* case of age discrimination, however, she has not shown that she was treated less favorably than other similar similarly situated employees under nearly identical circumstances. Although Mrs. Coffman believes that part-time instructor Cariama Gordon (Gordon) (44 years old) and Candy Reed (Reed) (53 years old) were similarly situated and treated more favorably, neither can be considered proper comparators. *Dodge v. Hertz Corp.*, 124 Fed.Appx. 242, 244-45 (5ᵗʰ Cir. 2005); *Trotter v. BPB Am., Inc.*, 106 Fed.Appx. 272, 276-77 (5ᵗʰ Cir. Aug. 4, 2004); *St. Romain v. Ft. Bend Cnty. Sheriff's Office*, No. H-09-2273, 2011 WL 306411, *3 (S.D. Tex. Jan. 27, 2011). In particular, Mrs. Coffman acknowledged[16] that she taught only lecture courses, whereas, Gordon and Reed taught activity courses. *Player v. Kan. City S. Ry. Co.*, 496 Fed.Appx. 479, 481-82 (5ᵗʰ Cir. 2012). In addition, unlike Mrs. Coffman, both Gordon and Reed had certifications and experience related to teaching these courses. (Dkt. No. 35, Ex. B at 31-31; Ex. F at 3, 5-6; Ex. G (Gordon depo.) at 6-7, 10-11; Ex. K (Reed depo.) at 19). Finally, unlike Mrs. Coffman, neither Gordon or Reed had teaching schedules (*e.g.*, Aerobics, Palates and Kickboxing) that Dr. Coffman indicated he was able or willing to accept as teaching assignments. (*Id.*, Ex A, Attach. No. A-9; Ex. C at ¶8; Ex. D at ¶10; Ex. E, Attach. No. E-1).[17]

---

[16] Dkt. No. 32 at ¶39.

[17] The Court pauses to note that Mrs. Coffman previously alleged she was subjected to gender discrimination as well, however, through amendment, she has voluntary dismissed this claim. Nevertheless, even to the extent that Mrs. Coffman had alleged that she was discriminated based on her gender when some of her classes were reassigned to a male instructor, Dr. Gary Coffman, this claim would fail because Dr. Coffman, as a full-time, tenured instructor, is not a proper comparator.

13

Nevertheless, even assuming that Mrs. Coffman could establish a *prima facie* case of discrimination based on her age, ACC has articulated a legitimate reason for reassigning two of her classes – namely, to protect Dr. Coffman's employment as a full-time, tenured instructor by ensuring: (1) that Dr. Coffman was able to carry a full-load of courses within the Department; and (2) that Dr. Coffman was not arbitrarily assigned courses, rather, that he was assigned courses that he indicated that he was willing and able to teach, which included the courses taught by Mrs. Coffman.

Finally, setting aside her speculation and/or unsubstantiated beliefs,[18] Mrs. Coffman has not shown that ACC's proffered reason was merely a pretext or that her age was a motivating factor behind its decision. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see generally, Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (although plaintiffs are protected from employment decisions based on intentional discrimination, it does not protect them from unfair decisions).

### 2. Retaliation Claim

Mrs. Coffman alleges that ACC retaliated against her by abating her grievance after she filed a charge of discrimination with the EEOC. (Dkt. No. 32 at 11). To state a claim of retaliation under the Title VII, a plaintiff must establish: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected

---

[18] Mrs. Coffman's subjective belief of a pretext – unsupported by any evidence save her conjecture or speculation (*see* Dkt. No. 35, Ex. B at 11-12, 15, 33-36, 54-55) – is insufficient to create a genuine issue of material as to this issue. *See generally, Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment).

activity and the adverse employment action. *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Roberson v. Alltel Info. Services*, 373 F.3d 647, 655 (5th Cir.2004).

Although there is no dispute that Mrs. Coffman engaged in protected activity by filing a charge of discrimination with the EEOC, her claim fails because she cannot demonstrate that ACC's decision to abate her grievance was an adverse employment action. *See Gregory v. Texas Youth Comm'n*, 2001 WL 2244241, at *1 (5th Cir. 2004) (denying employee access to internal grievance process not an ultimate employment decision); *Vasquez v. Nueces County, Tex.*, 2012 WL 401056, at *4 (S.D. Tex. Feb. 6, 2012) (claim that grievance hearing was cancelled and unreasonably delayed after discrimination charge filed was not adverse employment action); *Lynch v. Baylor Univ. Med. Ctr.*, 2006 WL 2456493, *9 n. 8 (N.D.Tex.2006) (denial of internal grievance procedure does not constitute an adverse employment action). Moreover, there is no evidence that Mrs. Coffman was harmed by ACC's decision to abate (not deny) her grievance. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (recognizing that the law does not protect against trivial harms, but only those that produce an injury or harm); *Lynch*, 2006 WL 2456493, at 7-9 (recognizing that plaintiff could secure all the relief available by filing the EEOC charge).

Finally, even assuming Mrs. Coffman could establish a *prima facie* claim or retaliation under Title VII, ACC has articulated a legitimate, non-retaliatory reason for abating her grievance while the EEOC charge was pending. *Lynch*, 2006 WL 2456493, at 7-9. Once again, setting aside any speculation she might have, Mrs. Coffman fails to adduce evidence that ACC's legitimate, non-retaliatory reason was pretextual.

## CONCLUSION

For all the foregoing reasons, this Court concludes that the Summary Judgment Motion filed by Defendant ACC (Dkt. No. 35) is **GRANTED** and that the Third-Amended Complaint filed by Plaintiffs Dr. Gary Coffman and Mrs. Patricia Coffman is **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _____7ᵗʰ_____ day of April, 2015.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

16